**UNITED STATES    DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **TIMOTHY WASHINGTON** | **CIVIL ACTION** |
| **VERSUS** | **NO.    14-733** |
| **TERRY TERRELL, WARDEN** | **SECTION "G"(5)** |

**<u>REPORT AND RECOMMENDATION</u>**

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.    Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2).    For the following reasons, **IT IS RECOMMENDED** that the petition for *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.[1]

I.    *Procedural history*

Petitioner, Timothy Washington, is a state prisoner incarcerated in the Allen

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. §2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by the exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.    28 U.S.C. § 2254(e)(2)(B).

Correctional Center, in Kinder, Louisiana.   On November 14, 2008, Washington was charged by bill of information with two counts of attempted second degree murder in violation of Louisiana Revised Statutes 14:30.1 and 14:27.[2]   On August 18, 2009, following a one-day bench trial, he was found guilty of both counts of attempted second degree murder.[3]   Washington was sentenced on December 15, 2009 to thirty (30) years imprisonment on each count, to run concurrently.[4]

On direct appeal, Washington raised three assignments of error:   (1) the State failed to prove that he was correctly identified as the perpetrator of the crime beyond a reasonable doubt; (2) the evidence was insufficient to sustain his convictions for attempted second degree murder because it failed to establish beyond a reasonable doubt that he did not act in self-defense or that he had the requisite specific intent to kill; and (3) defense counsel rendered    ineffective assistance because he did not file a motion to reconsider the excessive sentences.   The Louisiana Fourth Circuit Court of Appeal affirmed his convictions and sentences on January 26, 2011.[5]   The Louisiana Supreme Court denied his subsequent writ application without stated reasons on September 16, 2011.[6]    He did

---

[2] State Rec., Vol. 1 of 5, Bill of Information.

[3] State Rec., Vol. 2 of 5, Minute Entry of 8/18/09.

[4] State Rec., Vol. 3 of 5, Transcript of sentencing proceedings held December 15, 2009, p. 3.

[5] *State v. Washington*, 2010-1026, 2011 WL 9159674 (La. App. 4th Cir. 1/26/11); State Rec., Vol. 3 of 5.

[6] *State v. Washington*, 2011-KO-422 (La. 9/16/11), 69 So.3d 1146; State Rec., Vol. 3 of 5.

not seek review to the United States Supreme Court.

On July 26, 2012, Washington submitted a *pro se* application for post–conviction relief to the state district court.[7]   The district court denied relief on February 19, 2013.[8] His related writ application in the Louisiana Fourth Circuit Court of Appeal was denied on June 27, 2013.[9]   His subsequent request for supervisory writ of review to the Louisiana Supreme Court was denied on February 21, 2014.[10]

On March 7, 2014, Washington filed his federal application for *habeas corpus* relief.[11]

---

[7] State Rec., Vol. 5 of 5, Uniform Application for Post-Conviction Relief signed July 26, 2012. Federal *habeas* courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system."   *Causey v. Cain*, 450 F.3d 601, 607 (5th Cir. 2006).   If that date cannot be gleaned from the state court record with respect to the filings in this case, this Court will simply use the signature date of the applications as the filing date, in that the various applications were obviously placed in the mail no earlier than the date they were signed. In those instances where no signature date appears on a document and no other evidence is available, the Court will look to the file-stamp placed on the document by the clerk of court.

[8] State Rec., Vol. 5 of 5, District Court Order denying post-conviction relief dated February 19, 2013.

[9] *State v. Washington*, 2013-K-0810 (La. App. 4th Cir. 6/27/13) (unpublished writ ruling); see State Rec., Vol. 5 of 5.

[10] *State ex rel. Washington v. State*, 2013-KH-1821 (La. 2/21/14), 133 So.3d 675; State Rec., Vol. 5 of 5.

[11]   Rec. Doc. No. 1, Petition. "A prisoner's *habeas* application is considered 'filed' when delivered to the prison authorities for mailing to the district court."   *Roberts v. Cockrell*, 319 F.3d 690, 691 n.2 (5th Cir. 2003). Petitioner's certificate of service was signed and dated March 7, 2014, which is presumed to be the earliest date on which it could have been delivered to prison authorities for mailing.

In his petition, Washington asserts the following grounds for relief:   (1) the State presented insufficient evidence to prove his identity as the perpetrator of the crime; (2) the State presented insufficient evidence that he had specific intent to kill the victims and failed to negate the possibility that he acted in self-defense; (3) his sentences are constitutionally excessive; and (4) his trial counsel was constitutionally ineffective for failing to file a motion to reconsider his sentences.

The State filed a response conceding that the federal application is timely and that Washington has exhausted his remedies in the state courts.

II.     *Facts*

On direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts as follows:

> On May 23, 2008 at approximately 4:30 a.m., Freddie Ross and his son Malcolm were returning home in the Algiers area of New Orleans. As they were driving along the 700 block of Thayer Street towards Malcolm's home, Freddie Ross observed a man standing in front of 732 Thayer Street whom he thought to be his neighbor, Timothy Washington standing approximately fifteen feet away from their car. Freddie Ross pulled over and asked the man whether the garbage truck had come by yet, to which the man responded that he did not know. Malcolm Ross then exited the car and checked the inside of the garbage can in front of the house at 732 Thayer. Just as Malcolm reentered the car, the man they saw in front of 732 Thayer started shooting at Freddie and Malcolm Ross.
>
> Malcolm Ross testified that there were five gun shots. Though he and his father were ducking down in the car, Malcolm Ross suffered a gunshot wound to his left arm and was transported by EMS personnel to the hospital. Freddie Ross received an impact wound on his chest from one of the pellets and did not go to the hospital until after the police left.
>
> In an attempt to flee from the shooter, Freddie Ross backed his car up

towards the 800 block of Thayer Street, where the police found Freddie and his son. When New Orleans Police Officer Lauman arrived on the scene, he observed a white Lexus with several gunshot holes in it. Gunshot holes were apparent on two places alongside the windshield, on the rear passenger door, the center console, and through the headrest on the driver's seat of the car. Neither man saw where the shooter went after the shooting. Freddie testified that he would not have stopped to ask the man about the garbage unless it was not his neighbor, whom he knew was a trash collector. He testified further that [sic] man he spoke to in front of 732 Thayer seemed calm when he answered that he did not know whether the garbage had been picked up. Malcolm testified that the man was wearing dark clothing.

Freddie Ross told police that the man who fired the shots was someone he knew from around the neighborhood, and he informed the officer that the man lived at 732 Thayer Street.[12] As a result of the identification, Officer Lauman went to the Thayer Street address, where he met with Timothy Washington's girlfriend, Danielle Algere. Washington was not home at the time. However, Danielle provided Officer Lauman with a photograph of Washington, told the detective his name, and told him that he worked as a trash collector.

Using the photograph provided by Danielle, New Orleans Police Detective Cronk developed two photographic lineups that were shown individually to Freddie and Malcolm Ross. Both men immediately chose Timothy Washington as their assailant. The detective subsequently obtained an arrest warrant. The parties stipulated that on September 3, 2008, Timothy Washington was arrested at 732 Thayer Street by Detective Dobard after the detective received a tip that he was back at his residence. Washington was found in the attic by a K–9 unit.

Danielle Algere testified that she and Washington had been living together for approximately five years and that he was a sanitation worker. On the day of the shooting, May 23, 2008, she stated that he was wearing a lime green shirt and some denim cutoffs. Sometime later that same morning, the police came to Danielle's door and asked her who just ran through her house, and she told them no one. The police then searched her house. Washington was

---

[12] Malcolm did not know appellant; he lived several blocks away from appellant. Though Freddie recognized appellant and knew he was a trash collector, he did not know appellant's name. Both men identified appellant in court.

not found. At approximately 7:00 a.m. that morning Danielle went to her mother's house across the river. Washington was already there with his bicycle, and he was still wearing his work shirt and cutoffs. Danielle testified that she had never seen Timothy Washington with a gun.

Danielle's mother, Louella Harris, testified that Timothy Washington regularly came to her house after work. On the morning of May 23, 2008, he arrived early, saying that he had no work that day. He explained that he missed the truck. She further testified that Washington was wearing his work shirt and cutoffs, and that Danielle arrived at the house around 6:30 a.m.

Timothy Washington testified that he is employed by a sanitation company. On the morning of May 23rd, he left his residence at approximately 3:30 a.m., and rode his bicycle to the Stumpf Boulevard headquarters. When he arrived at headquarters, a work van took him and other trash collectors to their route in Slidell. Once he arrived in Slidell, he learned that there was no work. He then went back to Stumpf Boulevard and retrieved his bicycle. From there Washington caught the ferry to Ms. Harris' house across the river, where he met with Danielle.

Timothy Washington admitted that he had seen Freddie Ross before the shooting and had spoken to him. However, he denied shooting anyone in front of his house or that he owned a gun. He explained that he could not have a gun because he is a convicted felon. Washington stated that he did not go home on the night of the attempted murder because he was wanted, and did not return to the Thayer Street residence until September.[13]

III.     *Standards of review on the merits*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments

---

[13] *State v. Washington*, 2010-KA-1026, 2011 WL 9159674, at *1-2 (La. App. 4th Cir. 1/26/11) (footnote in original).

"modified a federal *habeas* court's role in reviewing state prisoner applications in order to prevent federal *habeas* 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of *habeas corpus* by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law or mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." *Bell*, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to

> clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

*Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.) (internal quotation marks, ellipses, brackets, and footnotes omitted), *cert. denied*, 131 S.Ct. 294 (2010).

Regarding the "unreasonable application" clause, the United States Supreme Court has held:

> [A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case.

*White v. Woodall*, 134 S.Ct. 1697, 1706 (2014).    However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error.    Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

*Id*. (citations and quotations marks omitted).    The Supreme Court has also warned that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694.    A state court's merely incorrect application of Supreme Court precedent simply does not warrant *habeas* relief.    *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir.2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so.

8

As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.   If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

*Harrington v. Richter*, 131 S.Ct. 770, 786–87 (2011) (citations omitted; emphasis added);

*see also Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1866 (2010) ("AEDPA prevents

defendants—and federal courts—from using federal *habeas corpus* review as a vehicle to

second-guess the reasonable decisions of state courts.").

IV.    *Petitioner's Claims*

(a)    *Sufficiency of the evidence*

Washington's first two claims challenge the sufficiency of the evidence presented by

the State to prove his identity as the perpetrator; the elements of the crime, namely, that he

had the specific intent to kill the victims; and to negate that he acted in self-defense.

On direct appeal, the Louisiana Fourth Circuit Court of Appeal rejected his

insufficient evidence claim, reasoning as follows:

> In his first assignment of error, appellant argues that the state failed to prove that he was correctly identified as the perpetrator of the crime beyond a

reasonable doubt. Specifically, he argues that the identification was based merely upon an assumption by Freddie Ross.

*State v. Holmes*, 2005–1248, pp. 8–9 (La.App. 4 Cir. 5/10/06), 931 So.2d 1157, 1162, discussed the standard to be used when a defendant disputes his identity as the perpetrator of an offense:

When a key issue at trial is whether the defendant was the perpetrator of the crime, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof beyond a reasonable doubt. *State v. Bright*, 1998–0398 (La.4/11/00); 776 So.2d 1134, 1147. The fact-finder weighs the respective credibilities of the witnesses, and a reviewing court will generally not second-guess those determinations. *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983). However, the touchstone of *Jackson v. Virginia* is rationality and that "irrational decisions to convict will be overturned, rational decisions to convict will be upheld, and the actual fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law." *State v. Mussall*, 523 So.2d 1305, 1310 (La.1988). The trier of fact makes credibility determinations, and may, within the bounds of rationality, accept or reject the testimony of any witnesses. *State v. Hampton*, 98–0331 (La.4/23/99); 750 So.2d 867, 880.

In support of his argument, appellant urges that Freddie Ross only assumed that the man standing near Timothy Washington's home was in fact Timothy Washington. He notes that the two men's description of the perpetrator was vague. Specifically, Freddie did not notice what type of clothing the perpetrator was wearing, and Malcolm testified that he was wearing dark clothing. Appellant also notes that it was dark outside, and that both men had very little time to observe the shooter as both men were ducking down while backing away.

As the trial and motion hearing transcript establish, Freddie Ross had no doubt that the perpetrator was appellant, his neighbor. Appellant lived a block away from Freddie Ross, and Mr. Ross had seen him in the neighborhood on several occasions. The evidence establishes that the victims were only a few feet away from appellant and that the area was illuminated by a street light nearby. Both men could clearly see appellant. Also, both men immediately identified appellant when presented with a photographic lineup and in court. The trier of fact was privy to the lack of any detailed physical description of the perpetrator, yet chose to find the victims' testimony

credible. This finding should not be disturbed as it is not clearly contrary to the evidence.[14]

The court of appeal also discussed Washington's arguments regarding proof of specific intent to kill and self-defense:

> Appellant argues that the evidence is insufficient for two reasons: (1) the evidence did not eliminate beyond a reasonable doubt that he did not act in self-defense; and (2) it did not establish beyond a reasonable doubt that he had the requisite specific intent to kill.

> Appellant raises the argument that he acted in self-defense for the first time on appeal. At trial, he testified that he was on the way to work and that he was not the person who shot at Freddie and Malcolm Ross. The only defense presented at trial was one of misidentification. In *State v. Juluke*, 98–0341 (La.1/8/99) 725 So.2d 1291, the Louisiana Supreme Court wrote:

> The *Jackson* standard does not provide a defendant with a means of splitting alternative and inconsistent defenses in different forums, raising one defense before the jury and when that fails, a second defense presupposing a different set of facts in an appellate court conducting sufficiency of review under *Jackson* and La. C.Cr.P. art. 821(E).
> 98–0341 at p. 4–5, 725 So.2d at 1293.

> Accordingly, the first argument presented by appellant in this assignment of error appears to be procedurally barred from review by this court. In any event, the discussion on appellant's second argument, that he lacked specific intent to kill, will not only show that the evidence was sufficient, it will also show that he did not act in self-defense.

> Appellant was charged with and convicted of two counts of attempted second degree murder. A conviction for attempted second degree murder requires proof that the offender had the specific intent to kill. *State v. Sullivan*, 97–1037, p. 20 (La. App. 4 Cir. 2/24/99), 729 So.2d 1101, 1111; *State v. Hongo*, 96–2060, pp. 2–3 (La.12/2/97), 706 So.2d 419, 420. Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow

---

[14] *State v. Washington*, 2010-1026, 2011 WL 9159674, at *3 (La. App. 4th Cir. 1/26/11).

his act or failure to act. La. R.S. 14:10(1). Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. La. R.S. 14:10(1); *State v. Bishop*, 2001–2548 (La.1/14/03), 835 So.2d 434.

Appellant argues specifically that the state failed to show that he had the requisite intent to kill because he simply reacted to the approach of Freddie and Malcolm Ross at 4:30 a.m. and to the banging of the trash lid as it was closed by Malcolm. Appellant urges that the approach and banging caused him to fire his gun randomly in self-defense, and he notes that Malcolm and Freddie suffered only minor injuries.

Because appellant's defense was one of misidentification, nothing was presented at trial that showed that he was startled by the approach of the victims or that he thought that an assault was imminent. In fact, Freddie testified that appellant seemed calm when he asked about the garbage, and no evidence was presented that Malcolm made excessive noise when he checked the garbage can. On the other hand, the evidence establishes that appellant did not begin firing at Freddie and Malcolm until Malcolm retreated back to the vehicle. Thus, any perceived threat had ended at that point. Appellant fired five shots towards the vehicle even though Freddie identified himself as a neighbor, and both men received gunshot wounds that required medical attention. The shots were fired from approximately fifteen feet away, and one of the shots even went through the headrest of the driver's side of the vehicle and only missed Freddie because he was ducking down. Finally, neither Freddie nor Malcolm was armed.

In *State v. Guy*, 95–0899 (La. App. 4 Cir. 1/31/96), 669 So.2d 517, this court found that specific intent to kill could be inferred from the firing of three shots at the rear of an occupied vehicle. Guy fired the shots because the driver honked at him. As in *Guy*, specific intent to kill can be inferred from the firing of five shots from close range at the vehicle occupied by Freddie and Malcolm Ross. Nothing presented at trial shows that appellant acted in self-defense. Thus, viewing the evidence in the light most favorable to the prosecution, the evidence was sufficient to support the convictions.[15]

The Louisiana Supreme Court denied relief without assigning additional reasons.[16]

---

[15] *Id.* at *4-5.

[16] *State v. Washington*, 2011-KO-422 (La. 9/16/11), 69 So.3d 1146.

A claim of insufficient evidence presents a mixed question of law and fact. *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir.2008); *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir.1995). Therefore, this Court must examine whether the state court's denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

Claims of insufficient evidence are to be analyzed pursuant to the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), which held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *Id.* at 319; *see also Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir.2011); *Perez*, 529 F.3d at 594. The Court's consideration of the sufficiency of the evidence extends only to what was presented at trial. *See McDaniel v. Brown*, 558 U.S. 120, 131, 130 S.Ct. 665, 672 (2010) (recognizing that a reviewing court must consider the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir.2009) (*Jackson* standard relies "upon the record evidence adduced at the trial") (*quoting Jackson*, 443 U.S. at 324).

Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are within the exclusive province of the jury. *United States v. Young*, 107 F. App'x 442, 443 (5th Cir.2004) (*citing United States v. Garcia*, 995 F.2d 556, 561 (5th Cir.1993)); *see Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate

facts"). Thus, all credibility choices and conflicting inferences must be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir.2005).

A federal *habeas* court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder. *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir.1995); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir.1985). In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir.2001) (*quoting Herrera v. Collins*, 506 U .S. 390, 402 (1993)).   Moreover, because the state court's decision applying the already deferential *Jackson* standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential." *Parker v. Matthews*, 132 S.Ct. 2148, 2152 (2012); *see also Coleman v. Johnson*, 132 S.Ct. 2060, 2062 (2012).

In the instant case, Washington contends the State failed to negate the possibility that the victims, Freddie and Malcolm Ross, misidentified him as the person who shot them. He points to their vague and conflicting descriptions of the shooter and the fact that the incident occurred in the dark early morning hours and the victims were focused on escaping the shots rather than observing the shooter, as evidence that the trier of fact acted irrationally in accepting the validity of the victims' identifications of Washington as the perpetrator of the crime.    However, as the state court noted, both of the victims positively identified Washington as the shooter.    Freddie Ross testified at trial that he did not

14

"assume" it was Washington.   He was adamant and "positive" that it was Washington whom he saw and spoke to on the street only moments before Washington began shooting at his vehicle.[17]   Malcolm Ross likewise testified at trial that he had the opportunity to observe clearly the person who shot him, and identified Washington as the shooter.[18] Generally, a victim's testimony and positive identification of a defendant is alone sufficient evidence to support a conviction. *Peters v. Whitley*, 942 F.2d 937, 941–42 (5th Cir.1991); *see also Fetterley v. Whitley*, No. 94–30310, 1994 WL 708655, at * 1 n. 6 (5th Cir. Dec. 6, 1994); *Holderfield v. Jones*, 903 F.Supp. 1011, 1017 (E.D.La.1995).

To the extent that Washington is arguing that the victims were not credible, that was an issue for the trier of fact, not a federal *habeas* court.   When reviewing a sufficiency of the evidence claim, a federal *habeas* court must defer to the trier of fact with respect to issues of conflicting testimony, weight of the evidence, and the credibility of the witnesses. *Jackson*, 443 U.S. at 319; see also *Schlup v. Delo*, 513 U.S. 298, 330, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) ("[U]nder *Jackson*, the assessment of the credibility of witnesses is generally beyond the scope of review."); *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

Finally, Washington contends he lacked specific intent to kill because he merely reacted by firing randomly toward the victims' car upon being startled by a loud bang of

---

[17] State Rec., Vol. 3 of 5, Trial transcript, p. 99.

[18] *Id.* at pp. 65-68.

the trash can lid; therefore there was no evidence that he intended to shoot, much less kill, anyone.    However, the record fully supports the state court's finding in this case.    The appellate court found that the evidence was sufficient for the trier of fact to determine that Washington had specific intent to kill the victims, as demonstrated by his firing at least five times at the victims' vehicle from close range with the victims inside the vehicle.    The appellate court also correctly concluded that the trial evidence did not support a finding of self-defense.    Washington's entirely subjective and unsupported argument that he was startled by a noise or fearful of the victims was properly rejected, because his defense at trial based on his own testimony was one of misidentification (*i.e.,* not being present at the scene of the crime), rather than self-defense.    The Louisiana Fourth Circuit Court of Appeal carefully considered and rejected each of Washington's specific arguments with regard to the evidence presented.    For the reasons noted by the state court, the evidence in this case, viewed in the light most favorable to the prosecution, was sufficient for any rational trier of fact to find Washington guilty beyond a reasonable doubt.    Therefore, he cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

   *(b)    Excessive sentence*

   Washington contends that the 30–year prison sentences he received for attempted second degree murder are unconstitutionally excessive and constitute cruel and unusual punishment under the Eighth Amendment.    The Louisiana Fourth Circuit Court of Appeal

found no merit in this claim on direct appeal.

To the extent Washington claims that the state trial court failed to comply with state sentencing rules, he has not stated a cognizable federal *habeas corpus* claim. *See*, *e.g.*, *Butler v. Cain*, 327 F. App'x 455, 457 (5th Cir.2009) (claim that sentence violated state law is not cognizable in federal *habeas* proceeding.); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir.1987) ( "... a state's failure to follow its own sentencing procedures is not reviewable by federal habeas corpus."). He is therefore not entitled to federal *habeas* relief on his state law claim. However, his claim that his sentence is cruel and unusual punishment in violation of the Eighth Amendment is cognizable on federal *habeas* review. This Court must determine whether the state court's denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

Federal courts accord broad discretion to a state trial court's sentencing decision that falls within statutory limits. *Haynes v. Butler*, 825 F.2d at 923–24; *see Turner v. Cain*, 199 F.3d 437, 1999 WL 1067559, at *3 (5th Cir.1999) (Table, Text in Westlaw) (because sentence was within Louisiana statutory limits and within trial court's discretion, petitioner failed to state cognizable *habeas* claim for excessive sentence); *accord Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir.2000) (*citing Haynes*, 825 F.2d at 923–24). A sentence within statutory limits will not be upset by a federal *habeas* court, unless it is grossly disproportionate to the gravity of the offense. *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991); *Solem v. Helm*, 463 U.S. 277, 291–92 (1983). "[W]hen a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross

17

disproportionality,'" this Court will then consider:    (1) the sentences imposed on other criminals in the same jurisdiction and (2) the sentences imposed for commission of the same offense in other jurisdictions. *Smallwood v. Johnson*, 73 F.3d 1343, 1347 (5th Cir.1996) (*quoting Harmelin*, 501 U.S. at 1005) (*citing McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir.1992)); *United States v. Gray*, 455 F. App'x 448, 449 (5th Cir.2011); *United States v. Thomas*, 627 F.3d 146, 160 (5th Cir.2010), *cert. denied*, 131 S.Ct. 2470 (2011).    If the sentence is not "grossly disproportionate" in the first instance, however, the inquiry is finished. *United States v. Gonzales*, 121 F.3d 928, 942 (5th Cir.1997), *overruled in part on other grounds*, *United States v. O'Brien*, 560 U.S. 218, 234–35 (2010) (as recognized in *United States v. Johnson*, 398 F. App'x 964, 968 (5th Cir.2010)).    As the Supreme Court has noted, successful proportionality challenges outside the context of capital punishment are "exceedingly rare" and constitutional violations are sustained only in "extreme" or "extraordinary" cases. *Ewing v. California*, 538 U.S. 11, 22 (2003) (quotation and citations omitted); *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quotation and citations omitted).

This is not an extraordinary case where the sentence is unconstitutionally disproportionate to the crime.    Washington's sentence is within the limits set by the Louisiana legislature. His sentences of thirty (30) years imprisonment for attempted second degree murder were within the middle of the statutory range.[19]    *See United States*

---

[19] Louisiana law provides that a person convicted of attempted second degree murder shall be imprisoned at hard labor for not less than ten (10) years nor more than fifty (50) years. La. R.S. 14:30.1, 14:27.

*v. Miknevich*, 638 F.3d 178, 186 (3d Cir.2011) ("Generally, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment. This is so because we accord substantial deference to [the legislature], as it possesses broad authority to determine the types and limits of punishments for crimes." (citations omitted)). Even though he concedes that his sentence was in the proper statutory range, Washington argues that his sentence was too harsh because he is a "hard-working, family man, who was without a conviction for more than fifteen years," the victims' injuries were not severe, and lesser sentences have been imposed     in manslaughter cases where death resulted.[20]     However, the Louisiana Fourth Circuit Court of Appeal set forth factors that sufficiently explained why his sentences of thirty years were proportionate and warranted for this crime:

> Appellant fired five shots at the vehicle occupied by the victims without any
> apparent provocation. Fortuitously, neither victim suffered life threatening
> injuries. Nonetheless, both victims received gunshot wounds that required
> medical attention. Thus, based on the seriousness of appellant's actions, the
> mid-range sentences of thirty years were warranted. Also, appellant
> admitted to having numerous prior convictions. Under the circumstances, the
> trial court did not abuse its discretion in imposing the sentences.
>
> Given the circumstances of his crime and his thirty-year sentences, this case simply

---

[20] Rec. Doc. 1, Memorandum in Support, pp. 23-26.

does not qualify as a rare situation in which the difference between the crime and the sentence was unconstitutionally disproportionate. *Compare Solem v. Helm*, 463 U.S. 277, 281, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) (holding that the Eighth Amendment prohibited a life sentence without the possibility of parole for a recidivist offender convicted of "uttering a 'no account' check for $100"), with *Harmelin v. Michigan*, 501 U.S. 957, 961, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (rejecting a proportionality challenge to a mandatory sentence of life without the possibility of parole imposed on a first-time offender convicted of possessing 672 grams of cocaine), and    *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980) (rejecting a proportionality challenge where the defendant had been sentenced to life imprisonment under a recidivist statute following his conviction for obtaining $120.75 by false pretenses).     Here, Washington fails to demonstrate that the adjudication of his excessive sentence claim was contrary to or involved an unreasonable application of clearly established federal law.     He is not entitled to relief on this claim.

    *(c)    Ineffective assistance of counsel*

Finally, Washington contends his counsel was ineffective for failing to move for reconsideration of his sentences.    The Louisiana Fourth Circuit Court of Appeal acknowledged that counsel had not objected to the sentence or filed a motion to reconsider.    Although typically this would preclude a defendant from raising a claim about his sentence on appeal, the court of appeal in this instance reviewed the merits of the excessiveness claim in the context of the ineffective assistance claim:

The defendant's claim of ineffective assistance of counsel is to be assessed by

the two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). *See State v. Fuller*, 454 So.2d 119 (La.1984). The defendant must show that his counsel's performance was deficient and that this deficiency prejudiced him. The defendant must make both showings to prove counsel was so ineffective as to require reversal. *State v. Sparrow*, 612 So.2d 191, 199 (La. App. 4 Cir.1992). Counsel's performance is not ineffective unless it can be shown that he or she made errors so serious that he or she was not functioning as the "counsel" guaranteed to the defendant by the 6th Amendment of the federal constitution. *Strickland*, *supra*, at 686, 2064. That is, counsel's deficient performance will only be considered to have prejudiced the defendant if the defendant shows that the errors were so serious that he was deprived of a fair trial. To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 693, 2068.

*See also State v. Crawford*, 2002–2048 (La. App. 4 Cir. 2/12/03), 848 So.2d 615.

Here, appellant can show prejudice only by proving that he would have been entitled to relief had counsel taken steps to preserve the issue on appeal. Thus, in order to determine if the ineffective assistance of counsel claim has merit, we must determine if his excessive sentence claim has merit.[21]

The court of appeal ultimately concluded:    "[Washington's] claim of excessive sentence is without merit.   As such, counsel should not be deemed ineffective for failing to file a motion to reconsider sentence."[22]

As correctly noted by the state court, the United States Supreme Court has established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate both that counsel's performance was deficient

---

[21] *State v. Washington*, 2010-KA-1026, 2011 WL 9159674, at *6 (La. App. 4th Cir. 1/26/11).

[22] *Id.* at *8.

and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 697 (1984). A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir.1993); *see also* *Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir.2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, *i.e.*, deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. *Strickland*, 466 U.S. at 697.

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir.2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir.1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *See Strickland*, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.' " *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *See* *Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir.1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir.1985).

In order to prove prejudice, a petitioner "must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett*, 796 F.2d at 793.

As noted, Washington's ineffective assistance of counsel claim was considered and rejected by the state courts on direct appeal. Because such a claim is a mixed question of law and fact, this Court must defer to the state court decision rejecting Petitioner's claim unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir.2002). Moreover, the United States Supreme Court has recognized that, under the AEDPA, federal *habeas corpus* review of an ineffective assistance of counsel claim is in fact doubly deferential. *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011) ("The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.").

In the instant case, this Court need not reach the issue of whether counsel performed deficiently by failing to move for reconsideration of the sentences, because Washington's claim clearly fails on the second prong of the *Strickland* analysis for lack of resulting prejudice. In light of the determination that Washington failed to establish that

his sentences were excessive there is no reason to believe that the state district court judge, who was well aware of the facts by virtue of having presided both at trial and at the sentencing hearing, would have been persuaded by such a motion. Furthermore, no different outcome would have resulted on appeal had defense counsel moved for reconsideration. While typically a failure to move for reconsideration of sentence prevents appellate review of a sentence pursuant to Louisiana Code of Criminal Procedure article 881.1(E), that rule was not applied in this case. Instead, Washington was afforded full appellate review of his sentences in this case, and his sentences were held to be proper. Accordingly, because there is no reasonable probability that the result of the proceeding would have been different even if counsel had filed such a motion, Washington has failed to show the prejudice required to support his ineffective assistance claim.

Consequently, Washington has failed to demonstrate that the state court's decision rejecting his ineffective assistance claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Thus, under the AEDPA's doubly deferential standard applicable to ineffective assistance claims, this claim should be rejected.

## RECOMMENDATION

**IT IS RECOMMENDED** that Washington's application for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14)

days after being served with a copy shall bar that party, except upon grounds of plain error,

from attacking on appeal the unobjected-to proposed factual findings and legal conclusions

accepted by the district court, provided that the party has been served with notice that

such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v.*

*United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) (*en banc*).[23]

New Orleans, Louisiana, this _____9th_____ day of _____March_____

, 2015.

_____
**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[23] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.